Albert C. ANDERSON and Olive Anderson, Plaintiffs, Appellants,

v.

OWENS–ILLINOIS, INC., et al., Defendants, Appellees.

No. 85–1622.

United States Court of Appeals, First Circuit.

Heard April 11, 1986.

Decided Aug. 25, 1986.

John T. Barrett with whom Thornton & Early, Boston, Mass., was on brief, for plaintiffs, appellants.

Lawrence G. Cetrulo with whom Burns & Levinson, Boston, Mass., was on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, ALD-RICH and COFFIN, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

Albert Anderson, plaintiff appellant, a former boilermaker and shipyard worker allegedly suffering from asbestosis and a preexisting lung condition aggravated by exposure to asbestos, sued Owens-Illinois, Inc. and four other manufacturers of asbestos for negligence and for breach of warranty, based on their failure to warn of the dangers of asbestos exposure. Pre-trial, plaintiff asked the court to strike defendants' "state of the art" defense, and to exclude state of the art evidence for purposes of the warranty claim.[1] The court refused. After a trial at which both sides introduced evidence on the state of the art, the court instructed the jury on its relevance and put the case to the jury on

---

1. All asbestos cases in the District of Massachusetts have been placed on a consolidated docket for pretrial management. These motions were made on the consolidated docket, and their disposition applies to all cases on that docket, including plaintiff's.

special questions. The jury returned verdicts for defendants on all claims. Plaintiff, alleging, further, various errors in the court's charge, appeals. We affirm.

Plaintiff's objections relate principally to the state of the art defense. Relying on language in *Hayes v. Ariens*, 391 Mass. 407, 462 N.E.2d 273 (1984), he had asked the court to instruct the jury,

> ... the adequacy of a warning is measured by the warning that would be given at the time of sale by an ordinarily prudent vendor who, at that time, is fully aware of the risks presented by the product. A defendant vendor is held to that standard regardless of the knowledge of risks that he actually had or reasonably should have had when the sale took place. The vendor is presumed to have been fully informed at the time of the sale of all risks. The state of the art is irrelevant, as is the culpability of the defendant....

Instead, the court charged,

> the duty to warn extends only to such dangers—to such dangers or defects about which the manufacturer either actually knew or about which it reasonably should have known. Now should have known here means that a manufacturer is held to that level of knowledge which the experts in the particular industry had or in view of the state of medical and scientific knowledge in general should have had at any particular point in time.

Plaintiff duly excepted to the charge, both as improperly allowing the jury to consider state of the art evidence on the warranty claim and as inadequately instructing on the meaning of the term "state of the art."

■ We start with plaintiff's first and, we think, most important objection. The requested charge, and, equally, the basis for the pretrial motion to strike the state of the art defense, is a virtually verbatim quote from *Hayes v. Ariens*, ante, 391 Mass. at 413, 462 N.E.2d 273. Plaintiff argues forcefully that the sentence, "The state of the art is irrelevant, as is the culpability of the defendant," is dispositive. The district court, however, found this statement to be dictum, and therefore not necessarily controlling. Accordingly, it considered the law of Massachusetts as a whole, and concluded that, notwithstanding the *Hayes* dictum, Massachusetts law requires a seller to warn only of reasonably foreseeable or scientifically discoverable dangers. We agree in all respects with the court's resolution.

Massachusetts does not recognize the doctrine of strict liability in tort enunciated in section 402A of the Restatement (Second) of Torts. *Swartz v. General Motors Corp.*, 375 Mass. 628, 630, 378 N.E.2d 61 (1978). It does, however, recognize the doctrine of implied warranty, Mass.Gen. Laws c. 106, § 2–314, which "[t]he Legislature has made ... congruent in nearly all respects with the principles expressed in [section 402A]." *Back v. Wickes*, 375 Mass. 633, 640, 378 N.E.2d 964 (1978). The Massachusetts courts, therefore, in determining the scope of warranty liability, have looked both to section 402A, *e.g., Correia v. Firestone Tire & Rubber Co.*, 388 Mass. 342, 353, 446 N.E.2d 1033 (1983), and to "the strict liability cases of other jurisdictions," *Back*, ante, 375 Mass. at 640, 378 N.E.2d 964. Thus, our inquiry begins with Massachusetts warranty cases, but turns, where necessary, to the Restatement and cases from jurisdictions that recognize it.

Before considering the legal issue, we note the scope of plaintiff's contention. The state of the art defense required that even scientific experts be unaware of the danger, and thus of the risk of the injury which plaintiff ultimately suffered. Plaintiff is not claiming that the dangers inherent in defendants' product—asbestos— were socially unacceptable, and that it should not have been put on the market at all, but, only, that when placed it should have been accompanied by a warning, even though, on defendants' evidence, which the jury, on the basis of the charge accepted, it was impossible for anyone to say of what the warning should have consisted.

With the issue thus defined, we start with the leading Massachusetts case of *Back v. Wickes*, ante, from which we have

already quoted. This was not a warning case. There a motor home accidentally struck a cable fence at the edge of the road, causing the fuel tank to shear, inflaming the vehicle. Plaintiff contended the tank should have been within the frame, and that, if less exposed, it would not have been injured. Defendant asserted the design met highest industry practice, and that the occurrence was not foreseeable. It also claimed that there was misuse. On the warranty count the court had allowed evidence as to industry practice, and instructed the jury that if it agreed with defendant as to misuse, its verdict should be for the defendant. The jury found for the defendant. In reversing, the Supreme Judicial Court ruled that, so far as warranty was concerned, striking a side-rail was within the realm of possibilities, and that, from the standpoint of misuse, the test was the product, not the defendant's anticipation. At the same time, the court held that there was no error in permitting defendant to show the standards of the trade, even a lower standard than state of the art, in determining whether the motor home was "unreasonably dangerous."

Thereafter, in *Correia v. Firestone Tire & Rubber Co.*, 388 Mass. 342, 446 N.E.2d 1033 (1983), also not a warning case, the court dealt with whether the plaintiff's contributory negligence was a defense in an action for breach of warranty of an unreasonably dangerous object, there a defective tire, or a defective trailer rig. In holding contributory negligence was not a defense, the court, as it did in *Back*, continued to note its adherence to the Restatement and the interpretations of other jurisdictions.

*Hayes v. Ariens*, ante, was a failure to warn case. It arose in an unusual fashion: whether special jury findings with respect to negligence and to warranty were inconsistent. There the defendant had sold a snow blower that clogged with heavy snow. The plaintiff reached into the discharge chute, without stopping the motor, and injured his fingers. The machine bore a notice: "Caution: Stop engine before removing obstruction from blower or rake." The plaintiff went to the jury on two theories;

that the warning was inadequate, and that the machine was improperly designed because it clogged and lacked a "deadman's clutch." The jury found plaintiff and defendant both negligent, (with plaintiff 60% negligent, so that he could not recover under Massachusetts negligence law) but that defendant did not breach its warranty of merchantability. In reversing, the Massachusetts court held that if defendant was negligent, whether because of improper design or inadequate warning, it necessarily breached its warranty.

The court thereafter engaged in a discussion as to a manufacturer not being relieved of liability for an unreasonably dangerous article even if he had taken all reasonable precautions, for which it cited *Back* and *Correia*. However, the dangers there were obvious, a far different situation from the case at bar where, it has been found, even experts did not know that dangers existed, let alone that the product was unreasonably dangerous. Under these circumstances we believe the district court was correct in saying that with respect to such facts the court's broad language was not controlling as "considered dicta." *Michelin Tires (Canada) Ltd. v. First National Bank of Boston*, 666 F.2d 673, 682 (1st Cir.1981); *cf. In re Air Crash Disaster Near Chicago*, 701 F.2d 1189, 1196 (7th Cir.1983), *cert. denied*, 464 U.S. 866, 104 S.Ct. 204, 78 L.Ed.2d 178. Equally uncontrolling was the court's citing plaintiff's case of *Beshada v. Johns-Manville Prods. Corp.*, 90 N.J. 191, 447 A.2d 539 (1982), a case which *did* present our facts. Rather, the question is, would the Massachusetts court follow that dictum today if faced with the very different facts here presented? We believe it would not, for several reasons.

We commence by noting that, subsequent to *Hayes*, the court used far less embracing language. In *MacDonald v. Ortho Pharmaceutical Corp.*, 394 Mass. 131, 475 N.E.2d 65 (1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 250, 88 L.Ed.2d 258 (1985), a case involving "the pill," and where plaintiff had suffered a "stroke,"

and claimed negligence and breach of warranty, the case went to the jury on what the court described as "a single claim of failure to warn." The court referred to no absolute duty, but stated the "duty is to provide to the consumer ... reasonable notice of the nature, gravity and likelihood of known or knowable side effects." 394 Mass. at 139, 475 N.E.2d 65. But even more important is the fact that examination of the Restatement and the weight of authority elsewhere, where unknowable dangers are involved, shows a declination to impose liability upon a manufacturer for not warning against dangers which, on the then state of the art, are not known to exist.

The significant portion of the Restatement is as follows.

§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer....

(2) The rule stated in Subsection (1) applies although

(a) The seller has exercised all possible care in the preparation and sale of his product....

This broad language is not to be applied indiscriminately, however, without analyzing the problem. Defendants' asbestos products are "unreasonably dangerous," even post facto, only in the claimed sense of a lack of warning. But if a danger is unknowable, how can effective warning be given? To warn that a product may have unknown and unknowable risks is to give no meaningful warning at all. See Wade, *On the Effect in Product Liability of Knowledge Unavailable Prior to Marketing*, 58 N.Y.U.L.Rev. 734, 747 (1983). That this situation is outside the black letter Restatement is flagged by comment j, which reads, in part,

" ... if the ingredient is one whose danger is not generally known, ... the seller

is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger ..."

Although differently expressed, this is exactly the charge the court gave. Plaintiff says it is a negligence charge, but it is not. It imposes a much higher standard than due care, but speaks in terms of expert knowledge, the product itself, exactly the distinction drawn in *Back*, 375 Mass., ante, at 643, 378 N.E.2d 964. Cases elsewhere do the same. E.g., *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1088 (5th Cir.1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (Texas law); *Basko v. Sterling Drug, Inc.*, 416 F.2d 417, 426 (2d Cir.1969) (Connecticut law); *Woodill v. Parke-Davis*, 79 Ill.2d 26, 37, 37 Ill.Dec. 304, 308, 402 N.E.2d 194, 198 (1980); *Oakes v. Geigy Agricultural Chemicals*, 272 Cal.App.2d 645, 650, 77 Cal.Rptr. 709, 713 (1969). See Murray, *Requiring Omniscience: The Duty to Warn of Scientifically Undiscoverable Defects*, 71 Geo.L.J. 1635, 1638–39 (1983). It should also be noted that in citing Wade, *On the Nature of Strict Tort Liability for Products*, 44 Miss.L.J. 825, 834–35 (1973), the *Hayes* court failed to observe that in his article in 58 N.Y.U.L.Rev., ante, at 763, the author had accepted the distinction in the present issue. See, also, Page, *Generic Products Risks: The Case Against Comment k and for Strict Liability*, 58 N.Y.U. L.Rev. 853, 921 (1983). We believe the *Hayes* dictum is not the law.

Nor do we think this conclusion to be contrary to the *Hayes* court's looking to manufacturer's liability insurance to spread the loss. An insurance company must appraise risks to determine premiums. It is appropriate that it consider scientific knowledge, as distinguished from the conduct of its individual insureds, but beyond that it, and the consumer on whom the premium ultimately falls, should not be riding blind. If a manufacturer, with the best scientific knowledge available, cannot tell

his consumer to guard against asbestos dust, or, say, against asbestos fumes when it is hot, or to protect the skin from contact over prolonged periods, or not to be burdened at all, as ultimately the case may be, equally we consider it socially undesirable that insurance must be bought, and computed on an equally blind basis. It should be time enough to charge manufacturers when there is something to point to beyond scientific unanticipated consequences.

■ Neither is there any merit in the claim that the court "transferred the burden of proof on this issue to the plaintiff." Plaintiff failed to take a proper and timely objection to the District Court's charge. Merely objecting to the court's declaration that the state of the art issue was "the nub of the case" did not constitute a distinct objection to the burden of proof instruction. Fed.R.Civ.P. 51. Plaintiff, moreover, never requested an instruction placing the burden of proof for state of the art on the defendants. He cannot, therefore, argue on appeal that he was prejudiced by the court's charge. Furthermore, it is far from clear that the court did place the burden of proving the state of the art on the plaintiff.

Again, plaintiff would have defendants weigh their conduct "against the danger." However relevant that often is, or even might have been here, it is inapplicable when, on the jury's findings, there was no knowable danger to weigh against. If, which we do not suggest, there was error, there was no prejudice.

■ The same is to be said with regard to plaintiff's complaint of the court's failure to charge that defendants had a duty to test. The court correctly felt it was irrelevant. Since defendants were held to be knowledgeable to the measure and extent of scientific experts, their testing of the product could not have added anything. Absent a showing of what else defendants could have learned, there could be no prejudice. Plaintiff has no valid complaints as to the charge.

■ We come finally to plaintiff's request for a new trial against Carey Canada, Inc. on the issue of damages. As to this defendant, the jury answered special question 2, "Was defendant negligent by failing to warn users ... subsequent to sale ...?" in the affirmative, but question 3, "Was plaintiff exposed to any asbestos containing products of defendant?" in the negative. The jury did not answer question 4, relating to injury and causation. Plaintiff contends that, because a sanction order entered September 26, 1984 mandated findings of exposure, injury, and cause, the court, on receiving the verdict of negligence, should have instructed the jury on the effect of the order, and sent them out for further deliberations on damages.

Here again, plaintiff's argument must fail for lack of a specific objection. Simply stated, his present argument is that material established facts were improperly drawn from the jury's consideration. At no time until the verdict had been returned, however, did plaintiff even request that the jury be informed of the order. Instead, he rests his present argument on a brief colloquy that occurred before opening statements.

> MR. TRULAND: Your Honor, there was the matter of the sanctions against Carey Canada. I just wanted to clear up before Mr. Motley makes his opening whether they will be handled the same way as they were in the Santa Maria case?
>
> THE COURT. Yes.

From this one oblique reference, before the trial commenced, to an earlier trial, plaintiff must now argue that the court was duly forewarned of his expectations concerning treatment of the order at the end of the trial. Assuming this to be a promise of future conduct by the court, it was for plaintiff to complain when it did not occur. It is universal practice that a court be given opportunity to correct its mistake, if any there be.[2]

---

2. Note, in this connection, the court's response to appellant's post-verdict suggestion that the

jury be reinstructed and sent back out: "I wish

This ruling makes it unnecessary to reach defendants' not unmeritorious contention that any error here was harmless in light of the jury's finding that plaintiff suffered no compensable damages.

*Affirmed.*

you had brought it to my attention ahead of time so I could have instructed it."