VAN Gestel, J.
This matter is before the Court on KPMG’s Motion to Strike Affidavit of Joseph Anoli and Request for Oral Argument, Paper #160. The oral argument was presented and the Court has examined the materials filed in support of and in opposition to the motion.

BACKGROUND

There is also under advisement before the Court a motion by the defendant KPMG Peat Marwick, LLP (“KPMG”) seeking summary judgment pursuant to Mass.R.Civ.P. Rule 56. The summary judgment motion is docketed as Paper #157. The key element supporting the summary judgment motion is a claim by KPMG that there is no evidence that would enable the plaintiffs, Imprimis Investors, LLC and Wexford Spectrum Investors, LLC (here jointly “Wexford”), to prove at trial that they received, examined and, therefore, relied upon a certain Audit Report of KPMG in connection with Wexford’s making a loan to, or investment in, a company called First New England Dental Centers, Inc. (“FNEDC”).
On February 11,2003, KPMG deposed Joseph Anoli (“Anoli”). Anoli, at material times, served as the chief financial officer of FNEDC and he was a defendant in this case. Among other things, the following questions by counsel for KPMG and answers by Anoli appear at p. 179,11. 3-15:
Q. So, sir, it is your understanding, is it not, that KPMG did not issue its audit report on FNEDC’s financial statements for the period ending 1/31/96 until it leamedstrike that.
It was your understanding, sir, that KPMG did not issue its audit report on FNEDC’s financial statements for the period ending 12/31/1996 until after it had learned from FNEDC that FNEDC had received the funds from Wexford
Mr. Kiely: Objection.
Q.is that correct?
Ms. Grant: Join.
A. That’s correct.
At the conclusion of the second day of the Anoli deposition, on March 24,2003, after counsel for KPMG announced that she had “no further questions,” counsel for Wexford stated: “I have no questions at this time.” The Anoli deposition was never resumed after that date and fact discovery closed on April 30, 2003.
By facsimile that arrived at 6:30 p.m. on April 30, 2003, the last day of fact discovery, Wexford served a set of “amended” or “supplemental” interrogatory answers. The answers were signed, “on information and belief,” by Wexford’s in-house general counsel, Arthur Amron. Mr. Amron has admitted that he had no first-hand knowledge of the facts detailed in the interrogatory answers.[3] These answers, for the first time, suggested that Wexford received a draft audit report before the closing of the loan or investment by it in FNEDC.
On November 5, 2003, Wexford produced an affidavit, signed by Anoli on September 17, 2003. A copy of this affidavit is included within the June 29, 2004, affidavit of counsel for Wexford in support of Wexford’s opposition to KPMG’s summary judgment motion. It *27 is not clear to this Court what the purpose for the Anoli affidavit was at the time of its execution or why it was not produced to KPMG until November 5, 2003.
In any event, contrary to his deposition testimony quoted above, Anoli said in the affidavit: “I sent the unsigned audit report or opinion of KPMG, to counsel for Wexford, either Ethan Blank or Fred Ragucci . . . KPMG was aware that I was going to send its opinion without signature to representatives of Wexford prior to the closing of the Loan, and sent me the unsigned opinion for the purposes of facilitating the closing of the loan.” Anoli does not elaborate further as to when he “sent” the unsigned audit report or whether what was sent, if it was at all, was the same as the Audit Report' ultimately signed by KPMG. In his affidavit, Anoli states that the signed KPMG Audit Report was “issued ... either at the Closing or immediately thereafter upon receipt of Wexford’s funds.”
By yet another affidavit from Anoli, signed on August 23, 2004, he states the following: “The basis for the above statement [in the quotation from the affidavit in the previous paragraph] as it appears in the September Affidavit are conversations I had with KPMG engagement partner, Alfred Wollacott.”
No copy of any unsigned KPMG Audit Report was attached to either of the Anoli affidavits or produced by Anoli, NEAT, Wexford or Wexford’s counsel.
A settlement was reached between Wexford and Anoli and he was dismissed from this case on November 25, 2003.
It is the September 17, 2003 Anoli affidavit that KPMG seeks to have stricken.

DISCUSSION

The law in Massachusetts is crystal clear that a party cannot defeat summary judgment by trying to create a disputed issue of fact through the submission of an affidavit that contradicts statements previously made by the affiant in his deposition. See O’Brien v. Analog Devices, Inc., 34 Mass.App.Ct. 905, 906 (1993) (“a party cannot create a disputed issue of fact by the expedient of contradicting by affidavit statements previously made under oath at a deposition”). See also Ng Brothers Construction, Inc. v. Cranney, 436 Mass. 638, 648 (2002) (“the non-moving party cannot create a material issue of fact and defeat summary judgment simply by submitting affidavits that contradict its previously sworn statements”); Morrell v. Precise Engineering, Inc., 36 Mass.App.Ct. 935, 937 (1994) (“the plaintiffs affidavit is not some sort of wand that can wave away the damage to his claim contained in testimony previously given at the deposition hearing”).
This Court will disregard the September 17, 2003 affidavit of Anoli, at least insofar as Section 42(3) and Exhibit C thereto is concerned

ORDER

For the foregoing reasons, KPMG’s Motion to Strike Affidavit of Joseph Anoli, Paper #160, is ALLOWED as to Section 42(3) and Exhibit C thereof.

Nhe affidavit of an attorney must be based on personal knowledge. Dattoli v. Hale Hospital, 400 Mass. 175, 178 (1987). The same requirement should apply equally to answers to interrogatories.